# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDWIN BHATTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. CIV-19-0655-F |
| | ) |
| SSM HEALTH CARE OF OKLAHOMA, INC., d/b/a SAINT ANTHONY HOSPITAL, | ) ) ) |
| | ) |
| Defendant. | ) |

## ORDER

This action brings state and federal discrimination claims arising out of plaintiff Edwin Bhatti's employment as a security officer for the defendant, SSM Health Care of Oklahoma, Inc. d/b/a Saint Anthony Hospital (St. Anthony's). Defendant moves for summary judgment on all claims. Doc. no. 48. Plaintiff responded, objecting to summary judgment. Doc. no. 51. Defendant filed a reply brief. Doc. no. 54. Plaintiff filed a sur-reply brief. Doc. no. 57.

The motion will be granted for the reasons stated below.[1]

### I. Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

---

[1] In light of this result, plaintiff's motion for an extension of time (doc. no. 58) is **STRICKEN** as moot.

477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).

Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).  The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to avoid a properly supported summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.  The Complaint

Plaintiff alleges discrimination and retaliation claims based on race, color, national origin, age and disability.  The claims are brought under Title VII of the Civil Rights Act (Title VII); the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 (ADA); the Age Discrimination in Employment Act (ADEA); 42 U.S.C. § 1981; and the Oklahoma Anti-Discrimination Act (OADA).  Doc. no.1, ¶ 3.

The claims relate to plaintiff's rate of pay when hired; to defendant's failure to promote plaintiff to two supervisory positions identified by the plaintiff; and to defendant's decision to place plaintiff on administrative leave and, ultimately, to terminate plaintiff's employment.

2

III. Undisputed Facts

The following facts are undisputed.[2] (Additional, undisputed facts are referred to in other parts of this order.)

-- Plaintiff Edwin Bhatti was born in Pakistan, is of Asian descent, is a U.S. citizen, is over the age of forty, and has a speech impediment which causes him to stutter.

-- On May 31, 2016, Mr. Bhatti was hired by St. Anthony's as a safety and security officer. At the time of hire, he was credited with two years of prior, relevant experience, and was offered a pay rate of $10.66 per hour, which was $.61 over the minimum rate of pay for the position. Defendant's Undisputed Material Fact (UMF) No. 1.

-- On November 20, 2017, Mr. Bhatti was charged with felony child endangerment, and misdemeanor driving under the influence of alcohol (DUI). On November 30, 2017, defendant placed Mr. Bhatti on administrative leave pending the outcome of the charges. Following resolution of the charges in 2018, restrictions were placed on plaintiff's driver's license. Defendant's UMF Nos. 2-4.

-- By letter dated March 19, 2018, Cheryl McConnell (St. Anthony's human resources director) advised Mr. Bhatti as follows.

> On November 30, you were suspended from work pending
> the outcome of charges against you for an auto accident

---

[2] At times, this order finds facts undisputed although plaintiff purports to dispute them. The court may do so if plaintiff's response to a proposed undisputed fact does not adequately identify disputing evidence. LCvR56.1(d)-(e). For example, in some instances plaintiff cites his 219-page deposition without identifying any passages. In other instances plaintiff identifies specific evidence, but that evidence is not responsive to the fact in question. And in some instances the evidence cited by plaintiff is not based on first-hand information or is otherwise speculative and not admissible. *See*, Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) ("In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*"; hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment).

> that occurred November 8, wherein you were allegedly driving under the influence of alcohol.
>
> Currently your driver's license contains restrictions that cause your license to not meet hospital standards. Therefore, you no longer meet the minimum qualifications for the position of security officer. Attached is a copy of your job description for your reference.
>
> Because you do not meet the minimum qualification for the position, we will terminate your employment. If you have additional information that will enable us to reconsider this action, please provide it to me by Friday March 23. This information will be considered but it is no guarantee your employment will not be terminated. If I do not receive adequate information preventing termination of employment, your termination will be effective March 23.

Doc. no. 48-7, cited in support of Defendant's UMF No. 4.

-- On March 23, 2018, St. Anthony's terminated Mr. Bhatti's employment. Defendant's UMF No. 4.

## IV.  Discussion

Defendant challenges all of plaintiff's claims, making arguments of two types: arguments related to the timing of plaintiff's charge filed with the Equal Employment Opportunity Commission (EEOC); and arguments challenging the sufficiency of the evidence to support plaintiff's claims.

### A.  Timing of the EEOC Charge

Defendant argues that plaintiff lacks standing to bring claims under the OADA because that Act requires plaintiff to file a charge of discrimination within 180 days of the alleged discrimination or retaliation.[3] It is undisputed that plaintiff

---

[3] Per 25 O.S. Supp. 2013 §1350(B), for the aggrieved party to have standing in a court of law, a charge must be filed within 180 days of the last date of alleged discrimination or retaliation.

4

did not file his charge of discrimination with the EEOC within 180 days of the alleged discriminatory or retaliatory conduct, as required by the OADA.[4] Moreover, plaintiff did not respond to defendant's lack of standing argument. The court will grant defendant's motion with respect to the OADA claims, which will be dismissed for lack of standing, which is a jurisdictional requirement.

Next, defendant argues it is entitled to summary judgment on claims alleged under Title VII, the ADA and the ADEA (all of plaintiff's federal claims except the §1981 claim) because these claims were not the subject of a charge filed with the EEOC within 300 days of the alleged unlawful employment practices. It is undisputed that the EEOC charge was not filed within 300 days of the alleged unlawful employment practices. The 300-day period is not jurisdictional, however, and plaintiff has asserted an estoppel argument to avoid his limitations problem.

Plaintiff has identified evidence intended to show that the EEOC investigator he met with led him to believe he had a year from the date of his interview within which to file a charge. Defendant counters that plaintiff's estoppel argument is foreclosed because undisputed language in an EEOC form which plaintiff signed on July 20, 2018, states as follows above plaintiff's and the EEOC investigator's signatures: "I UNDERSTAND THAT IF I DECIDE TO FILE A CHARGE IN THIS MATTER, I MUST DO SO WITHIN 300 DAYS OF THE DATE OF ALLEGED DISCRIMINATION." Doc. no. 48-14.

Equitable tolling of the EEOC filing period may be appropriate where a plaintiff has been lulled into inaction by the federal agency. Gray v. Phillips Petroleum Co., 858 F.2d 610, 615-16 (10th Cir. 1988). Plaintiff has identified passages in his deposition testimony, and has also submitted an affidavit, which

---

[4] The EEOC charge shows March 23, 2018, as the latest date on which discrimination took place. The charge was signed by Mr. Bhatti over a year later, on March 29, 2019. Doc. no. 48-13.

support his arguments for estoppel based on the conduct of the EEOC investigator. Despite the clear language in the form signed by the plaintiff, there is a genuine issue as to whether estoppel should bar defendant from relying on the 300-day limitations period. Accordingly, defendant's limitations argument is rejected as a basis for summary judgment on claims alleged under Title VII, the ADA and the ADEA.

### B. Challenges to the Sufficiency of Plaintiff's Evidence

Given the court's ruling that the OADA claims will be dismissed for lack of standing, part B of this order addresses only plaintiff's federal claims.

#### 1. *Race, National Origin, Color and Age Discrimination Claims*

Defendant argues that plaintiff's race, national origin, color and age discrimination claims brought under Title VII, the ADEA and § 1981, fail for lack of supporting evidence. These claims are based on the following alleged adverse employment actions: 1) defendant's setting of plaintiff's pay rate, when hired, at $10.66 per hour, which plaintiff claims was less than the rate of pay for similarly situated co-workers; 2) defendant's failure to promote plaintiff to two supervisory positions identified by the plaintiff; and 3) defendant's decision to place plaintiff on administrative leave and, ultimately, defendant's decision to terminate plaintiff's employment. (Plaintiff's hostile environment claims are discussed in another part of this order.)

Plaintiff has not presented direct evidence of discrimination with respect to these or any other claims alleged in this action, so the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. Under that framework, when challenged at the summary judgment stage, plaintiff must raise a genuine issue of material fact with respect to each element of his prima facie case; if he does so, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its employment decision; if defendant does so, the burden shifts back to the plaintiff to show there is a genuine issue of material fact

regarding pretext, *i.e.* whether defendant's proffered reasons for the challenged action are unworthy of belief. Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019).[5]

Of the adverse actions complained of (rate of pay, failure to promote, and placement on leave followed by termination), defendant argues that plaintiff has identified no evidence to support a prima facie case with respect to only the failure to promote claim.

A prima facie case of failure to promote requires, among other things, evidence showing plaintiff applied and was qualified for the position involved. Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1306 (10th Cir. 2005). Plaintiff complains that Kaylie Graham was promoted to morning supervisor and that Justin Wright was hired as a parking lot supervisor. Doc. no. 48-17 (plaintiff's answer to interrogatory no. 4). It is undisputed, however, that plaintiff did not apply for either of the supervisory positions into which Graham or Wright were promoted. Defendant's UMF No. 11. Furthermore, to the extent plaintiff contends it would have been futile to apply for these positions, he has identified no evidence to support that contention. *See*, Bird v. Regents of New Mexico State University, 619 Fed. Appx. 733, 763 (10th Cir. 2015) (plaintiff failed to establish a prima facie case, and failed to show pretext on appeal, because she produced no facts to show her application for promotion to full professor would have been futile without the support of the chairman of the department), unpublished.

Because plaintiff has not identified evidence to support one of the prima facie elements of a failure to promote claim which is based on race, color, national origin or age discrimination, defendant is entitled to summary judgment on such claims.

---

[5] McDonnell Douglas was a Title VII case, but its framework also applies to age discrimination cases, Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1278 (10th Cir. 2010), and to § 1981 claims. Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999).

Moving on, at the second step of McDonnell Douglas analysis, defendant must identify evidence to show that its decision regarding plaintiff's initial rate of pay, its decision not to promote plaintiff to the supervisory jobs plaintiff has identified, and its decisions to place plaintiff on administrative leave and then to terminate plaintiff's employment, were based on legitimate, non-discriminatory reasons.

With respect to the rate of pay claim, defendant has identified evidence that plaintiff's rate of pay at the time he was hired was based on his prior, relevant work experience.

With respect to the failure to promote claim, defendant has identified evidence that defendant did not consider any individual for a supervisory position in the safety and security department unless the individual applied for an open position using defendant's application tracking system.

With respect to the decisions to place plaintiff on administrative leave and to terminate plaintiff's employment, defendant has identified evidence that plaintiff was placed on leave due to pending criminal charges of felony child endangerment and misdemeanor DUI; that as a result, restrictions were placed on plaintiff's driver's license; that as a further result, plaintiff no longer met the minimum qualifications for the security officer position and his employment was terminated.

Defendant has identified evidence of legitimate, non-discriminatory reasons for the complained of adverse employment actions. Accordingly, the burden shifts back to plaintiff to establish a genuine issue of fact with respect to pretext. As explained below, plaintiff has not done so.

Regarding the rate of pay issue, it is undisputed that plaintiff's rate of pay when hired was based on his years of prior, relevant experience (two years), because of which he was offered a pay rate of $10.66 per hour, which was over the minimum rate of pay for that position. Defendant's UMF No. 1. Plaintiff purports to dispute

defendant's UMF No. 1, citing parts of his deposition testimony. In the cited testimony, plaintiff identifies "an officer" who he eventually identified as Brian Blasingame. Doc. no. 51-5, p. 59 (spelled "Blassingame" in the deposition transcript). Plaintiff testified that Blasingame told plaintiff that Blasingame was hired with no experience, and that he was paid "like, twelve fifty." *Id*. at pp. 59-60. Plaintiff cannot rely on this testimony, however, because it is hearsay with respect to Blasingame's rate of pay and the level of Blasingame's relevant experience when hired.

Moreover, defendant has presented evidence that Blasingame was hired with four years and three months of prior, relevant experience and was therefore paid an initial rate of $11.31 per hour. Defendant's UMF No. 13. Plaintiff purports to dispute UMF No. 13, citing his own deposition testimony, in which he explained he put Blasingame on the witness list because "he was the officer with no experience, nothing, who was…getting paid more than me." Doc. no. 51-5, p. 113. But again, plaintiff has not identified any non-speculative and non-hearsay basis for this testimony. In short, plaintiff has not identified more than a scintilla of evidence to show that Blasingame was paid at a higher rate than plaintiff was paid despite (supposedly) having less relevant experience.

To the extent plaintiff may have intended to rely on the pay of Trenton Roth, undisputed evidence shows Roth took a pay-cut to become a safety and security officer at a rate of $10.65 per hour. Defendant's UMF No. 14. In addition, undisputed evidence shows that Cody Boggess (Caucasian), who defendant credited with two years of relevant experience (the same number of years defendant credited plaintiff with) was offered a pay rate of $10.66 per hour, the same as plaintiff's rate. Defendant's UMF No. 15.

Plaintiff has not carried his burden to identify evidence of pretext with respect to his rate of pay, entitling defendant to summary judgment on this claim.

9

Moving on, defendant argues that plaintiff cannot show pretext regarding the decision not to promote plaintiff to the positions Kaylie Graham and Justin Wright were promoted to (*see*, plaintiff's answer to interrogatory no. 4, doc. no. 48-17, identifying these two individuals), because it is undisputed: that plaintiff did not apply for those positions; and that defendant did not consider anyone for a supervisory position in the safety and security department unless the individual submitted an application for an open position using defendant's applicant tracking system. Defendant's UMF No. 10-11. The court agrees these facts are undisputed and that plaintiff has not identified evidence of pretext with respect to the failure to promote claim.

With respect to placing plaintiff on administrative leave and ultimately terminating his employment, defendant argues plaintiff cannot show pretext because, among other reasons, plaintiff cannot identify a comparator who was treated more favorably in similar circumstances. Plaintiff's response brief does not contend otherwise. Instead, to show pretext, plaintiff argues that despite restrictions on his driver's license, defendant knew plaintiff could drive for work-related purposes, and that to be able to work, plaintiff was only required to provide proof that he could drive as necessary for work. *See*, *e.g.*, doc. no. 51, pp. 13-14; doc. no. 57, p. 4. Plaintiff, however, has not identified a genuine fact issue regarding these contentions.[6] Plaintiff has not demonstrated a genuine fact issue with respect to his argument that defendant's reasons for putting plaintiff on leave, and ultimately terminating plaintiff's employment, were pretextual.

---

[6] For example, plaintiff's sur-reply brief (doc. no. 57, p. 4) cites plaintiff's affidavit (doc. no. 51-2) and a letter from the Department of Public Safety regarding plaintiff's limited driving privileges. Doc. no. 51-6. But these documents do not indicate that plaintiff was told he could return to work even if driving restrictions remained on his license. In addition, undisputed evidence shows that defendant asked plaintiff whether restrictions had been "COMPLETELY" removed from his driver's license. Doc. no. 54-1 (email of 3/19/18).

10

Plaintiff also argues that pretext is shown because defendant knew about, but failed to correct, discrimination in the workplace. Doc. no. 51, p. 13. This contention in plaintiff's brief is not followed by a citation to evidence, however, the court believes plaintiff intends to rely on the same evidence that he cites to support his hostile environment claims. Accordingly, the court will address that evidence in some detail.

The record includes claims by plaintiff that another safety and security officer, Kenneth Mosier, used slurs. These slurs are described in plaintiff's written statement to the EEOC investigator. Doc. no. 51-4, p. 2 of 6.[7] There, plaintiff states that a co-worker, Shawna Charley, told plaintiff that Mosier "always says"… "[t]his Sand *igger, Camel Jockie [sic], stuttering mother *ucker needs to go back to his country from where he came." *Id*. Thus, in his EEOC statement, plaintiff does not claim to have first-hand knowledge of any slurs by Mosier. Plaintiff's supplemental answer to interrogatory no. 3 suffers from the same lack of first-hand information. Doc. no. 48-15, p. 2. Plaintiff's deposition testimony is the same. There, plaintiff clearly testified that Mosier did not make the slurs directly to plaintiff's face. Doc. no. 48-4, p. 77.[8] Plaintiff was asked, "[A]re you alleging that Officer Mosier ever said these things directly to your face?" Plaintiff answered, "No, because he did not." *Id*.

Moreover, what is most relevant to plaintiff's pretext argument is not whether slurs occurred, but whether defendant knew that Mosier had uttered slurs but did nothing to correct or address that situation. Plaintiff's EEOC statement indicates that

---

[7] Plaintiff states that this written statement was given to the EEOC during his July 2018 meeting with the investigator. Doc. no. 51, p. 21.

[8] Plaintiff's affidavit seeks to avoid the problem created by his lack of first-hand knowledge about Mosier's slurs. There, plaintiff states, "I was told to 'go back to where he [sic] came from.'" Doc. no. 51-2, ¶ 14. The affidavit also states that slurs "were told to Plaintiff repeatedly…." *Id*. at ¶ 21. To the extent these affidavit statements are intended to show that slurs were stated to plaintiff personally, they are merely conclusory and insufficient when measured by the record as a whole.

11

plaintiff relayed what Charley had told plaintiff that Mosier had said to two night supervisors and to McConnell (in human resources). Plaintiff's EEOC statement indicates that McConnell told plaintiff she would see what she could do, but nothing was done to Mosier. Plaintiff, however, does not explain or present evidence to show how he could conceivably have first-hand knowledge about what the night supervisors or McConnell did or did not do in response to the second-hand information plaintiff claims he gave them regarding Mosier's slurs.

Plaintiff has not identified more than a scintilla of evidence to show pretext.

In summary (and holding aside, for now, plaintiff's hostile environment claims), plaintiff's claims of race, national origin, color and age discrimination fail because plaintiff has not identified evidence of pretext. The failure to promote claim also fails for lack of evidence to support a prima facie case.

### 2. *Disability Discrimination Claims*

Next the court considers the sufficiency of the evidence to support plaintiff's disability discrimination claims. The complaint alleges that plaintiff's stuttering is a disability and that defendant discriminated against him based on this "known disability."[9] Doc. no. 1, ¶¶ 7, 43. Plaintiff alleges that because of his stutter, defendant took the same adverse actions which have already been discussed (related to plaintiff's rate of pay, the failure to promote, and placing plaintiff on leave followed by termination of his employment).

Like the claims already discussed, the disability claims are analyzed under the McDonnell Douglas framework. Dewitt v. Southwestern Bell Telephone Co., 845

---

[9] Although plaintiff's response brief makes passing reference to his being "regarded as" disabled (doc. 51, p. 16), no "regarded as" disability claim is alleged. In plaintiff's sur-reply brief, he argues that the joint status report refers to "disability discrimination," a term he contends is broad enough to include a "regarded as" claim. The joint status report does not amend the pleadings. In addition, nothing in the joint status report put defendant on notice that plaintiff intended to allege a "regarded as" claim.

F.3d 1299,1306-07 (10th Cir. 2017). To state a prima facie case of disability discrimination, plaintiff must demonstrate that there is a genuine issue of fact with respect to, among other things, his contention that he is disabled within the meaning of the ADA. Lincoln v BNSF Railway Co., 900 F.3d 1166, 1192 (10th Cir. 2018).

To the extent relevant here, the ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §12102(1)(A). Determining whether a particular impairment substantially limits a major life activity requires an individualized assessment. 29 C.F.R. §1630.2(j)(iv). Courts have held that when considering discrimination claims brought by individuals who stutter, plaintiff must show that the stutter substantially limits a major life activity.[10] Plaintiff does not contend that the law is otherwise. Instead, he contends his stutter limits his major life activity of speaking and communicating. Doc. no. 51, p. 15. That contention, however, is not followed by a citation to any evidence.

Plaintiff's response to defendant's UMF No. 8 is also relevant. There, plaintiff states that his stutter impacts his day-to-day activities including speaking and communication. In support of that response, plaintiff cites his deposition testimony, in which he testified that words are sometimes hard for him to say. Deposition, doc. no. 51-5, p.32. Defendant's counsel then asked whether "stuttering, in terms of its impact [on] day-to-day [activities], caused [plaintiff] to not engage in

---

[10] *See, e.g.*, Ripple v. Olympic Steel, Inc., 2014 WL 509200, *1 (M.D. Pa. Feb. 10, 2014) (an impairment qualifies as a disability under the ADA if it substantially limits an individual's major life activity; plaintiff's testimony indicated he could speak understandably; he testified that his stutter did not affect his job performance; he had not submitted medical evidence regarding his stutter and did not claim his stutter impacted other aspects of his life; based on undisputed facts, plaintiff's stutter did not qualify as a disability under the ADA); Bates v. Wisconsin Dept. of Workforce Dev, 636 F. Supp. 2d 797, 809 (W.D. Wisc. 2009) (no evidence that plaintiff's stuttering substantially limited any major life activity).

certain activities?" Plaintiff answered, "No, sir." *Id*. Counsel asked whether stuttering impacted plaintiff's ability to work. Plaintiff answered, "No, sir." *Id*. at p. 33. Counsel asked whether stuttering impacted plaintiff's ability to do his job at Saint Anthony's. Again, plaintiff answered, "No, sir." *Id*. Plaintiff also testified that he had never requested an accommodation related to his stuttering. *Id*.

Plaintiff has not identified evidence that his stuttering substantially limits a major life activity. Accordingly, plaintiff has not identified evidence of a prima facie case of disability discrimination, and defendant is entitled to summary judgment on the disability claims.

In addition, the court's analysis at the second and third step of the McDonnell Douglas analysis is the same with respect to the disability discrimination claims as it was with respect to plaintiff's other discrimination claims. In other words, even if plaintiff had identified evidence of a prima facie case of disability discrimination, defendant has offered legitimate, non-discriminatory reasons for the complained of adverse employment actions, and plaintiff has not shown that there is a genuine issue regarding pretext. For this reason also, defendant is entitled to summary judgment on the disability discrimination claims.

### 3. *Retaliation Claims*

Plaintiff alleges that defendant retaliated against him when defendant set his initial rate of pay, failed to promote plaintiff to the supervisory positions he has identified, and when defendant placed plaintiff on administrative leave. Doc. no. 1, ¶ 14 (alleging these adverse employment actions were retaliatory and saying nothing about any contention that the termination of plaintiff's employment was retaliatory).[11]

---

[11] Alternatively, if the complaint should be construed as alleging that plaintiff's termination was retaliatory, the evidence would not support such a claim.

The McDonnell Douglas framework applies to the retaliation claims. Singh v. Cordle, 936 F.3d 1022, 1042 (10th Cir. 2019) (Title VII); Salemi v. Colorado Public Employees' Retirement Assoc., 747 Fed. Appx. 675, 697 (10th Cir. 2018) (§1981); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008) (ADEA); and Proctor v. United Parcel Service, 502 F.3d 1200, 1207-1208 (10th Cir. 2007) (ADA).

To establish a *prima facie* case of retaliation, plaintiff must show 1) that he engaged in protected opposition to discrimination; 2) that defendant took action against him which a reasonable person would have found materially adverse; and 3) that a causal connection existed between the protected activity and the materially adverse action. Singh, 936 F.3d at 1042. Defendant argues plaintiff has not identified evidence to support a prima facie case of retaliation with respect to plaintiff's initial rate of pay or the failure to promote claim.

With respect to the retaliatory rate of pay claim, defendant argues there is no evidence of a causal connection (the third prima facie element) because plaintiff's initial rate of pay was established at the time he was hired, well before any protected activity occurred. Plaintiff was hired on May 31, 2016. Defendant's UMF No. 1. Accordingly, plaintiff's initial rate of pay, $10.66 per hour, was established at that time. The claimed protected activity is plaintiff's alleged reporting, in 2017,[12] of slurs by Mosier. Doc. no. 1, ¶¶ 10, 11 (alleging adverse treatment after plaintiff complained about comments made by Mosier). Thus, plaintiff's rate of pay was established before the protected activity occurred. This sequence of events defeats any causal connection between plaintiff's rate of pay and his protected activity, entitling defendant to summary judgment on this retaliation claim.

---

[12] Per plaintiff's EEOC statement, Mosier was hired in 2017; plaintiff heard from Charley that Mosier had used slurs; plaintiff relayed this information to McConnell; no one did anything to Mosier "from June till I was there till November 30th, 2017." Doc. no. 48-12, p.2.

With respect to the claim that plaintiff was not promoted due to retaliation, plaintiff has not identified evidence to support a prima facie case because it is undisputed that plaintiff did not apply for the supervisory positions in question, *i.e.* the positions to which Graham and Wright were promoted. Stover v. Martinez, 382 F.3d 1064, 1072 (10th Cir. 2004) ("In order for a plaintiff to assert that her employer retaliated against her by failing to hire, rehire, or promote her, that employee must have applied for the position she was denied."). Failure to apply defeats any claim that plaintiff suffered an adverse employment action at the hands of his employer (the second prima facie element). Failure to apply also breaks any asserted causal relationship between the alleged retaliation and the failure to promote (the third prima facie element). *See*, Cazeau v. Wells Fargo Bank, N.A., 2014 WL 11444089, *19 (N.D. Ga. 2014) ("failure to apply for any position … [was] intervening event[] that severed any possible causal connection between [plaintiff's] protected activity and either the backfilling of his position or termination."). Accordingly, defendant is entitled to summary judgment on this claim.

Moving on to the second stage of the McDonnell Douglas framework, the court has previously found that defendant has offered legitimate, non-discriminatory reasons for plaintiff's rate of pay, for the failure to promote plaintiff to the positions in question, and for the decision to put plaintiff on administrative leave (and for the decision to terminate plaintiff's employment, although the complaint does not allege that act was retaliatory). Accordingly, the burden shifts to plaintiff to identify a genuine issue of fact with respect to pretext.

This order has detailed the reasons why, in the context of plaintiff's other claims, plaintiff has not identified a genuine issue as to pretext. In the context of the retaliation claims, plaintiff asserts an additional argument in support of pretext, arguing that "not long after plaintiff complained, Plaintiff was placed on leave…." Doc. no. 51, p. 19. Thus, for purposes of his claim that he was retaliated against

when he was placed on leave, plaintiff relies on a temporal relationship to show pretext.

Plaintiff complained about Mosier's discriminatory remarks in June or July of 2017 (deposition, doc. no. 48-4, p. 165), and was placed on administrative leave on November 30, 2017. Assuming plaintiff complained on the last day of July, 2017, there was a four-month gap between the last protected activity and defendant's decision to place plaintiff on leave. Shorter timespans than this have been held insufficient to establish causation by temporal proximity. *See, e.g.*, Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) (two months and one week, up to just under three months, are, under the court's precedents, probably too far apart to establish causation by temporal proximity alone).[13] Considering the four-month (or greater) period between the protected activity and the complained of conduct, the court finds, in the circumstances of this case, that the time lapse defeats any inference of causation. Accordingly, the court rejects plaintiff's attempt to show pretext based on the temporal relationship between his complaints about Mosier and his being placed on leave.

For the reasons stated (lack of pretext evidence, and lack of evidence to support a prima facie case with respect to plaintiff's claims based on rate of pay and failure to promote), defendant is entitled to summary judgment on the retaliation claims.

### 4. *Hostile Work Environment Claims*

Finally, the court addresses defendant's arguments for summary judgment on plaintiff's claims that he was harassed, subjecting him to a hostile work environment.

---

[13] Plaintiff's sur-reply brief (doc. no. 57, p. 3) argues defendant has not shown that plaintiff's complaints in June or July of 2017 were his last complaints. However, at the pretext stage of the summary judgment analysis, it is plaintiff's burden to identify evidence of pretext. Plaintiff cites no evidence to show or suggest that he made any complaints after July of 2017.

To make out a hostile work environment claim under Title VII or §1981, plaintiff must show:  1) that he is a member of a protected group; 2) that he was subject to unwelcome harassment; 3) that the harassment was based on his race, color, national origin, or disability; and 4) that due to the harassment's severity or pervasiveness, it altered a term, condition or privilege of plaintiff's employment and crated an abusive working environment.  Payan v. United Parcel Service, 905 F.3d 1162, 1170 (10th Cir. 2018) (Title VII and § 1981).  A plaintiff claiming a hostile work environment claim under the ADA must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.  Williams v. FedEx Corporate Services, 849 F.3d 889, 897 (10th Cir. 2017).  Age discrimination may form the basis of a hostile environment claim if 1) the employee was discriminated against because of his age; and 2) the discrimination created a workplace so permeated with severe or pervasive intimidation, ridicule, and insult, that it altered the employment conditions and created an abusive working environment.[14]  Howell v. New Mexico Dept. of Aging & Long Term Services, 398 Fed. Appx. 355, *4 (10th Cir. 2010), unpublished.

Thus, all of plaintiff's hostile work environment claims require harassment so severe or pervasive that they created an abusive working environment.  In assessing the pervasiveness and severity of allegedly harassing incidents, the court considers the work atmosphere both objectively and subjectively, looking at the circumstances

---

[14] Defendant argues that plaintiff does not allege a hostile work environment claim under the ADEA.  The complaint can be read more broadly than that.  *See*, doc. no. 1, fourth cause of action, incorporating all prior allegations.  However, plaintiff does not ask the court to do so, and plaintiff has identified no ageist comments.  Plaintiff likely did not intend to allege a hostile environment claim based on age. Nevertheless, as a precaution, the ADEA is included in the discussion of plaintiff's hostile environment claims.

from the perspective of a reasonable person in the plaintiff's position. <u>Tademy v. Union Pacific Corp.</u>, 614 F.3d 1132, 1144 (10th Cir. 2008).

Plaintiff has not presented evidence which creates a genuine issue of fact regarding harassment so severe or pervasive that it created an abusive working environment in the legal sense. As previously explained, plaintiff contends that a co-worker, Mosier, used slurs referencing plaintiff's race, or color, or national origin or disability. Also as explained earlier, the overwhelming weight of the evidence establishes that the slurs by Mosier were not made to plaintiff's face. Plaintiff testified at his deposition that Shawna Charley, the employee who told him about Mosier's statements, spoke with plaintiff about Mosier's statements between two and five times. Doc. no. 48-4, p. 78. While clearly offensive, the slurs did not threaten physical harm.[15] Although plaintiff's affidavit states that the slurs "caused me unlawful stress," and were "anxiety inducing" and "scary," (doc. no. 51-2, ¶¶ 15, 21), plaintiff has identified no evidence showing that the comments interfered with his job performance.

Although the alleged comments by Mosier have no place in in any environment much less a work environment, the comments, when measured by legal standards, are not sufficiently severe or pervasive as to alter the terms of plaintiff's employment and create an abusive work environment. *See*, <u>Al-Kazaz v. Unitherm Food Systems, Inc.</u>, 594 Fed. Appx. 460, 462-63 (10th Cir. 2014) (three incidents in which plaintiff was called "camel jockey," "sand *igger," and "raghead," both inside and outside of plaintiff's presence, were not sufficiently frequent or continuous to create an objectively hostile work environment; affirming summary judgment for

---

[15] Plaintiff asserts that Charley also told plaintiff to "watch his back," because Mosier was saying things behind his back. Doc. no. 51-4, p. 2 (EEOC statement). In that context, statements to "watch your back" cannot reasonably be construed as threatening physical harm.

the defendant). Accordingly, defendant is entitled to summary judgment on the hostile environment claims.

### C. Summary

The court has found that defendant is entitled to dismissal of plaintiff's claims alleged under the OADA for lack of standing.[16] The court has also found that defendant is entitled to summary judgment on all of plaintiff's federal claims, for lack of sufficient supporting evidence. Accordingly, no claims survive this order, and defendant is entitled to summary judgment in this action.

### V. Conclusion

After careful consideration, the motion for summary judgment of defendant SSM Health Care of Oklahoma, Inc. d/b/a Saint Anthony Hospital is **GRANTED**, as follows. Plaintiff's claims alleged under the Oklahoma Anti-Discrimination Act are **DISMISSED** for lack of standing (lack of jurisdiction). Summary judgment is **GRANTED** in favor of the defendant, and against the plaintiff, on plaintiff's federal claims.

IT IS SO ORDERED this 5th day of January, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0655p012.docx

---

[16] As an alternative basis for relief with respect to the OADA claims, the court finds that if it were to reach the merits of those claims, defendant would be entitled to summary judgment for the same reasons that apply to the federal claims. *See*, Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017) ("The OADA is analyzed similarly to Title VII claims.").